UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DMITRY KRUGLOV,

    *Plaintiff*,

v.

UNITED STATES CUSTOMS AND
BORDER PROTECTION,

    *Defendant*.

Civil Action No. 22-260 (RDM)

**MEMORANDUM OPINION**

This matter is before the Court on the motion of Defendant U.S. Customs and Border Protection ("CBP" or the "agency") for summary judgment, Dkt. 28. For the reasons explained below, the Court will **GRANT** CBP's motion.

**I. BACKGROUND**

Plaintiff Dmitry Kruglov had several encounters with CBP while crossing between the United States and Mexico in July 2021. Dkt. 1 at 2 (Compl. ¶ 7). On July 29, 2021, Plaintiff filed a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request with CBP seeking "all files, records, reports, photos and videos" related to his crossings of the United States-Mexico border that month. Dkt. 28-3 at 20 (Ex. F); *see also* Dkt. 1 at 2 (Compl. ¶ 6–7). CBP sent Plaintiff a letter acknowledging receipt of his request the following day, Dkt. 1 at 5 (Ex. 1), but did not respond to the substance of the request within the twenty-day period specified by FOIA, 5 U.S.C. § 552(a)(6)(A)(i). When CBP failed to provide a substantive response to his request within the prescribed period, he filed this suit. Dkt. 1.

After Plaintiff filed suit, CBP provided him with twenty-four pages of responsive records, some of which were redacted pursuant to Exemptions 6, 7(C), and 7(E), 5 U.S.C. § 552(b)(6), (7), and it withheld other records in full.  First, on March 23, 2022, CBP released two pages of unredacted records from its e3 portal, which contains information about individuals who have interacted with U.S. Border Patrol.  Dkt 28-1 at 8.  Then, on October 24, 2022, CBP released seven pages of records from its Analytical Framework for Intelligence ("Analytical Framework") with partial redactions and, on January 26, 2024, it re-released six of those pages with some of the redactions removed.  *Id.* at 9.  Finally, on March 29, 2023, CBP released fifteen additional pages with partial redactions from TECS (not an acronym), a "comprehensive law enforcement information collection, risk assessment, and information sharing system."  *Id.* at 10, 13.

Plaintiff seeks unredacted versions of these records and a declaratory judgment that CBP violated his rights by failing to respond within the twenty-day period specified by FOIA.  Dkt. 1.  CBP moves for summary judgment, arguing that it conducted a reasonable and adequate search and that its withholdings are appropriate under FOIA.  Dkt. 28.  Plaintiff opposes CBP's motion, arguing that CBP's search was inadequate and that its withholdings are unlawful.  Dkt. 31.

## II.  ANALYSIS

The Freedom of Information Act is premised on the notion that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The Act embodies a "general philosophy of full agency disclosure."  *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)).  It thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions.  "These exemptions are 'explicitly made exclusive' and must be 'narrowly

construed.'" *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973), and *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).  As explained further below, the present dispute turns on the meaning and application of Exemptions 6 and 7.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7 protects "records or information compiled for law enforcement purposes," *id.* § 552(b)(7), but only if those records fall within one of the exemption's five sub-parts, two of which, 7(C) and 7(E), are relevant here.

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56.  *See, e.g.*, *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981)), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973); *Summers v. Dep't of Just.*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'"  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action.  5 U.S.C.

§ 552(a)(4)(B).  Plaintiff challenges the adequacy of CBP's search.  He also argues that CBP (1) has been overly broad in its application of FOIA exemptions and (2) unnecessarily delayed in providing him with the requested records.

A.      **Adequacy of the Search**

"[T]o obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 199) (citations omitted).  To meet this burden, "the agency must submit affidavits (or declarations) that denote which files were searched, [and] by whom those files were searched, and [that] reflect a systematic approach to document location." *SAI v. TSA*, 315 F. Supp. 3d 218, 241 (D.D.C. 2018) (internal quotation marks omitted) (alterations in original).

The adequacy of a search "is generally determined not by [its] fruits . . . , but by the appropriateness of the methods used to carry [it] out." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  "Ultimately, the adequacy of the search is 'dependent upon the circumstances of the case' and measured by a 'standard of reasonableness.'" *Flete-Garcia v. U.S. Marshals Serv.*, 613 F. Supp. 3d 425, 432 (D.D.C. 2020) (quoting *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  An agency "'cannot limit its search to only one record system if there are others that are likely to turn up the information requested,' but, at the same time, it need not 'search every record system.'" *SAI*, 315 F. Supp. 3d at 241 (quoting *Oglesby*, 920 F.2d at 68).  "Similarly, the agency need not deploy every conceivable search term or permit the FOIA requester to dictate the search terms in the course of litigation, but it must use terms reasonably calculated to locate responsive records." *Id.*

4

Here, although far from clear, Plaintiff seems to argue that the agency's search was inadequate because it failed to locate the "fingerprint records," which he claims were created when he crossed the border. Dkt. 31 at 2–3. In support of its motion for summary judgment, CBP submits the Declaration of Patrick Howard, who is the Branch Chief in the FOIA Division at CBP. Dkt. 28-2 at 1 (Howard Decl. ¶ 1). In that declaration, Howard details the agency's extensive efforts to locate these records. He explains:

> CBP fingerprint records of travelers processed at ports of entry are generally stored and processed within the Automated Biometric Identification System (IDENT). IDENT is the "central DHS-wide system for storage and processing of biometric and associated biographic information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions; and associated testing, training, management reporting, planning and analysis, or other administrative uses." *See* DHS/CBP/PIA-002 Automated Biometric Identification System (IDENT) (December 2012), available at https://www.dhs.gov/publication/dhsnppdpia-002-automated-biometricidentification-system. The IDENT system is maintained by the DHS Office of Biometric Identity Management (OBIM), not CBP. *See* https://www.dhs.gov/obim.
>
> . . . . IDENT is the primary repository of biometric information held by DHS in connection with its several and varied missions and functions, including, but not limited to: the enforcement of civil and criminal laws, including immigration investigations, inquiries, and proceedings thereunder; and national security and intelligence activities. IDENT is a centralized and dynamic DHS-wide biometric database that also contains limited biographic and encounter history information needed to place the biometric information in proper context. Information regarding how to request records from DHS OBIM is available at https://www.dhs.gov/foia-contact-information. No fingerprint records were located during the course of CBP's search of CBP systems for records responsive to Plaintiff's request. As an additional step in an abundance of caution, during the course of the preparation of this declaration, CBP's Office of Field Operations in Nogales, Arizona (the location where Plaintiff's crossings of the U.S. border occurred in 2021 according to CBP's records) was asked to confirm whether any locally maintained copies of any fingerprints that may have been collected by CBP from Plaintiff exist, and the CBP Area Port of Nogales confirmed that copies of fingerprints are not maintained locally.
>
> . . . . As described above, CBP has completed a thorough series of searches for records in CBP's systems that were reasonably calculated to produce all records responsive to Plaintiff's request.

*Id.* at 8–9 (Howard Decl. ¶¶ 18–20).

Plaintiff seems to object to the adequacy of this search for two reasons: First, he is confident that his fingerprints were taken, and, second, the agency—on his reading—only looked for "searches returned" from IDENT and not for "fingerprints sent" to the database. Dkt. 31 at 2–3. Those arguments fail for several reasons. As explained above, the adequacy of a search is not determined based on the "fruits" of the search but by the thoroughness of the methodology employed. Moreover, here, the Howard declaration explains that "CBP fingerprint records of travelers processed at ports of entry are generally stored and processed" using the IDENT system, which, in turn, is a DHS system—and not a CPB system. Finally, he explains that— after conducting a diligent search, Plaintiff's fingerprint records were not found in any CBP system. To the extent Plaintiff remains interested in seeking his fingerprint records, his remedy is to file a FOIA request with DHS OBIM.

After reviewing the Howard declaration, the Court is persuaded that the agency (eventually) conducted an adequate search for potentially responsive records.

**B.     Withholdings**

Plaintiff contests the propriety of CBP's decision to redact portions of the released documents pursuant to FOIA Exemption 7(E). Although Plaintiff does not contest the information redacted pursuant to Exemptions 6 and 7(C), the Court will briefly address those as well. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (holding that a district court may not treat an unopposed motion for summary judgment as conceded); *but cf. Dutton v. U.S. Dep't of Just.*, 302 F. Supp. 3d 109, 126 (D.D.C. 2018) (distinguishing cases where the nonmovant responds in part).

1.     *Exemptions 6 and 7(C)*

According to the Howard declaration and the accompanying *Vaughn* index, CBP redacted the names and identifying information of government personnel under FOIA Exemptions 6 and 7(C). *See* Dkt. 28-3 (*Vaughn* Index). Exemption 6 shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects those "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). The two exemptions protect similar privacy interests, although they differ in scope. Exemption 7(C) applies only to records "compiled for law enforcement purposes." *Id.* "And because Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *FLRA*, 510 U.S. at 496 n.6). Accordingly, the Court will evaluate the CBP's decision to withhold portions of records compiled for law enforcement purposes only under Exemption 7(C), because "it provides broader privacy protection than Exemption 6." *See CREW v. U.S. Dep't of Just.*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014).

Under FOIA, a record qualifies as a "law enforcement" record if (1) "the agency's investigatory activities that g[a]ve rise to the documents . . . [were] related to the enforcement of federal laws or to the maintenance of national security" and (2) "the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least 'a colorable claim' of its rationality." *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982). It is evident that the records that CBP released to (or withheld from) Plaintiff

7

are "law enforcement" records. Howard attests that the records contain information "created and used by CBP in its law enforcement mission to secure the border of the United States," a claim that Kruglov does not dispute. *See* Dkt. 28-2 at 12 (Howard Decl. ¶ 26). The partially redacted records originated from the Analytical Framework, which "enhances DHS's ability to identify, apprehend, and prosecute individuals who pose a potential law enforcement or security risk" and TECS, which is an "information collection, risk assessment, and information sharing system." *Id.* at 3–4 (Howard Decl. ¶ 10–11). The records were compiled by CBP in furtherance of its federal law enforcement mission. *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 30 F. Supp. 3d 67, 74–75 (D.D.C. 2014); *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 125 (D.D.C. 2021). Kruglov does not appear to contest that the produced records qualify as "law enforcement" records, *see* Dkt. 28, nor, based on this record, could he reasonably do so.

The D.C. Circuit has recognized that law enforcement officials "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives," *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980), and it has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity,'" *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard*, 926 F.2d at 1206)). Under this precedent, the "names" of law enforcement employees that were redacted fall squarely within Exemption 7(C). *See* Dkt. 28-3 (Ex. A).

Application of Exemption 6, moreover, would lead to the same result. The presence of "personal, identifying information," on its own, "is not enough to invoke Exemption 6;" instead,

8

the information must be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49–50 (D.D.C. 2017) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).  To make that determination, the Court first must evaluate whether "disclosure would compromise a substantial, as opposed to a de minimis, privacy interest," *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989), and then "balance the privacy interest in non-disclosure against the public interest" in disclosure, *Consumers' Checkbook, Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

The Howard declaration indicates that disclosure of the "names, signatures, and other identifiers, such as identifying numbers" of the governmental personnel and third parties at issue "would constitute a clearly unwarranted invasion of privacy." Dkt. 28-2 at 11 (Howard Decl. ¶¶ 24–25).  "The release of this information could," for example, expose "government employees to unwarranted harassment and publicity, which could limit their effectiveness in handling their respective functions and duties," and it "could also subject third parties to unwarranted contact, annoyance, or harassment."  *Id.* (Howard Decl. ¶ 25).  And, on the other side of the balance, disclosure would "not shed light on the actions of CBP," nor would it further any other cognizable public interest.  *Id.*

The Court, accordingly, concludes that the CBP's withholdings pursuant to Exemptions 7(C) and 6 were proper.

    2.    *Exemption 7(E)*

CBP also redacted information compiled for law enforcement purposes under FOIA Exemption 7(E).  *See* Dkt. 28-3 (*Vaughn* Index).  Exemption 7(E) "requires a two-step inquiry:"

first, "the Court must determine whether the records were compiled for law enforcement purposes." *Judicial Watch*, 282 F. Supp. 3d at 46.  The Court has already concluded that the records at issue were compiled for law enforcement purposes.  Second, the Court "must determine whether release of those records 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'"  *Id.* (quoting 5 U.S.C. § 552(b)(7)(E)).  For this second step, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding:  'Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

In his declaration, Howard explains that the redacted information includes "reasons for which [Plaintiff] was referred for secondary inspection[;] . . . law enforcement characterizations made by CBP officials[;] . . . and codes, identifiers, and system notations used to refer to specific law enforcement techniques and information." Dkt. 28-2 at 14–15 (Howard Decl. ¶ 33).  He explains that the agency also redacted "the methods used by CBP to obtain and parse information[;] . . . what information observed during an inspection CBP deems to be operationally relevant; and whether and how that information . . . is stored and organized." *Id.*  Disclosure of this information could reveal "techniques utilized to identify violators . . . and the scope of CBP's technical capabilities." *Id.* at 15 (Howard Decl. ¶ 34).

Plaintiff responds that the redacted information does not fall within the scope of Exemption 7(E) because some of the redacted sections are entitled "Referral Reason," "Referral

Comment," "Referral Status," and "Source." Dkt. 31 at 1–2. According to Kruglov, "Reason," "Comment," "Status," and "Source" "can hardly be categorized as 'procedures.'" *Id.* But that crabbed reading of Exemption 7(E) is inconsistent with precedent in this Circuit interpreting "techniques and procedures" broadly. It is well established, for example, that "codes, identifiers, and system notations" are protected under 7(E). *See, e.g., McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012) (upholding 7(E) redactions of codes related to the TECS system); *Patino-Restrepo v. U.S. Dep't of Just.,* No. 17-5143, 2019 WL 1250497, at *2 (D.C. Cir. Mar. 14, 2019) (upholding 7(E) redactions of internal codes and identification numbers); *Miller v. U.S. Dep't of Just.*, 872 F. Supp. 2d 12, 28–29 (D.D.C. 2012) (upholding 7(E) redactions of codes used to identify information and individuals); *Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 123 (D.D.C. 2014) (upholding 7(E) redactions of violator identifier codes).

The reasons why Plaintiff was referred for secondary inspection and the specifics of that inspection, moreover, also fall well within the ambit of Exemption 7(E). *See Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 3, 22–23 (D.D.C. 2009) (upholding Exemption 7(E) redactions of "Incident Reports" where plaintiff sought to uncover "why he has been detained, questioned, and/or searched in airports"). Here, the Howard Declaration provides sufficient basis to conclude that disclosure of information "such as the reasons for which [Plaintiff] was referred for secondary inspection by CBP" and the "law enforcement characterizations made by CBP officials during those inspections of Plaintiff at the border," would risk circumvention of CBP's investigatory techniques and could assist others in developing "countermeasures." Dkt. 28-2 at 14–15 (Howard Decl. ¶¶ 33–34). Where an agency "specializes in law enforcement, its decision to invoke Exemption 7 is entitled to deference." *Campbell v. U.S. Dep't of Just.*, 164

F.3d 20, 32 (D.C. Cir. 1998). This is such a case, and the agency has adequately and persuasively justified its invocation of that exemption.

The Court, accordingly, concludes that CPB's Exemption 7(E) withholdings were proper.

## C.     Delay

Plaintiff also seeks declaratory relief. He claims that CPB's delay in responding to his FOIA request was "deliberate," Dkt. 31 at 4, and that the delay "violated [his] statutory rights under 5 U.S.C. § 552," Dkt. 1 at 4 (Compl. ¶ 29). Plaintiff's FOIA request included a request for video footage of his crossing, but CBP was unable to obtain any footage because such footage "is typically only retained for ninety days from when the encounter occurred." Dkt. 28-1 at 11–12. By the time the search was conducted, "any responsive video . . . would have been overwritten or deleted." *Id.* at 12. Plaintiff alleges that CBP intentionally waited to conduct the search so that the footage would no longer be available. Dkt. 31 at 4.

This argument is unavailing under well-established precedent. A claim alleging delay "only becomes actionable when 'some policy or practice' also undergirds it." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) (quoting *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)). Plaintiff's complaint does not allege the existence of a common policy or practice of tardiness at CBP, *see* Dkt. 1, nor has he provided any evidence of material facts that would support such an allegation, *see* Dkt. 31. Moreover, Plaintiff does not even allege that he is likely to file a FOIA request with CPB in the future, much less that, if he did so, it is likely that he would confront a similar delay and a similar risk that responsive records might be lost in the interval. Finally, the Court is unaware of any evidence—and Plaintiff has failed to identify any evidence—suggesting that CPB acted in bad

faith and that it delayed with the knowledge (and intention) that any responsive video would be lost.

For all of these reasons, Plaintiff is not entitled to declaratory relief for any delay—nor is it clear that any such relief would do him any good at this point. As the D.C. Circuit has explained, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013). CBP already incurred this "penalty" for the delay when Plaintiff brought the present suit, and CBP is not arguing administrative exhaustion here.

## C. Segregability

The Court must also consider *sua sponte* whether the CBP has produced all segregable, non-exempt information. *See Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) ("[T]he District Court ha[s] an affirmative duty to consider the segregability issue *sua sponte*." (quoting *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999))); *see also Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728, 733–35 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, (D.C. Cir. 2007))). To establish that all reasonably segregable, non-exempt information has been disclosed, CBP bears the burden of demonstrating "with 'reasonable specificity'" that the information it withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (quoting *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)).

In his declaration, Howard describes CBP's efforts to produce all segregable, non-exempt information. He attests that "CBP personnel have reviewed the documents determined to be responsive, line-by-line" and "all reasonably segregable portions of the relevant records have been released to Plaintiff." Dkt. 28-2 at 16 (Howard Decl.¶ 35). Nine pages of records were withheld in full because they were "duplicative law enforcement sensitive versions of TECS records that were provided to Plaintiff." *Id.* at 7 (Howard Decl. ¶ 16). The information in these records was "so intertwined with protected material that segregation [was] not possible or its release would have revealed the underlying protected material." *Id.* at 16 (Howard Decl. ¶ 35). Kruglov does not challenge CBP's segregability analysis, and the Court has no reason to doubt the agency's representations. To the contrary, it appears that, when it was possible to do so, the agency released records that were redacted, and it withheld in full less than half of the records at issue.

The Court, accordingly, is satisfied that the agency has produced all segregable, non-exempt records.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment, Dkt. 28.

A separate order will issue.

>  /s/ Randolph D. Moss
>  RANDOLPH D. MOSS
>  United States District Judge

Date:  September 30, 2024